JOHN J. PASCOE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9174. Promulgated April 21, 1927.

In the absence of evidence of the cost of the petitioner's interest in property, or the value thereof on March 1, 1913, the Board is unable to determine what amount, if any, the petitioner is entitled to deduct from gross income in its income-tax return for 1921 for exhaustion or depletion.

*M. J. Kennedy, Esq.*, for the petitioner.
*Joseph Harlacher, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1921 in the amount of $407.77. The only questions in issue are (1) the right of the petitioner to deduct from gross income in his income-tax return a reasonable amount for depletion, and (2) the amount of such depletion deductible, if any.

### FINDINGS OF FACT.

The petitioner is a resident of Ishpeming, Mich. He is a practical man, having been foreman, shift boss, miner, pump man, and engineer. In 1912 he entered into a partnership agreement with Charles D. Fournier, Jr., for the purpose of handling iron ore properties. These individuals believed that a certain quarter section in Gogebic County, Michigan, was underlaid with a vein of iron ore. Under the partnership agreement the petitioner was to endeavor to interest

certain mining men and mining companies in prospecting for ore upon the tract in question. Fournier was to show parties interested over the property and to point out to them the petitioner's and his own belief with respect to the trend of an ore vein. The petitioner succeeded in interesting certain mine operators in the property, one of whom was A. B. Coates, and another George P. Tweed. These individuals on November 19, 1912, took an option for a mining license or lease. Coates and Tweed agreed to pay Fournier the sum of $1,250 in cash and a royalty of 1¼ cents per gross ton upon all ore mined and removed under the said mining lease and an interest in the net profits resulting to Coates and Tweed from the explorations and operations under the option for a mining lease and under the mining lease itself amounting to a one twenty-fourth interest in the profits. The mining property in question was owned by John Hanousek and Anne Hanousek, his wife, of Ramsey, Mich. The lease to the property was executed by them in favor of Coates and Tweed and was dated March 15, 1913, and recorded May 3, 1913.

The petitioner because of his services to the partnership existing between himself and Fournier became entitled to one-half of whatever Fournier might receive out of the transaction. He thus became entitled to $625 in cash paid to Fournier on March 15, 1913, and one-half of Fournier's interest in certain contracts made between Coates and Tweed and other parties relating to the leased property. The petitioner was compelled to bring suit to recover his one-half of the interest in such cash payment and contracts which suit was decided in favor of the petitioner. This decree was made and entered in the Circuit Court for the County of Marquette, in Chancery, February 9, 1916. The decree of the court evidences the existence of a partnership between petitioner and Fournier and the one-half interest of the petitioner in all the " moneys, profits, royalties and contracts realized and received therefrom [Hanousek transaction] by the defendant, Charles D. Fournier, Jr." The decree further recites that:

* * * Defendants, A. B. Coates and George P. Tweed and the Savannah Iron Mining Company, a corporation under the laws of the State of Minnesota and the defendants, Edward J. Pearce, Charles D. Fournier, Jr. and Albert J. Rough entered into two certain contracts dated November 19, A. D. 1912 and January 15th. A. D. 1914 and that under and by virtue of said contracts and the mining leases hereinbefore referred to, the defendant, Charles D. Fournier, Jr., received the sum of twelve hundred fifty dollars ($1250.00) and that in and by said contracts it was further agreed that so long as said leases remain in force and effect the said Charles D. Fournier, Jr. should receive and be paid a royalty of one and one-quarter cents (1¼c) per gross ton of twenty-two hundred forty pounds (2240 lbs.) upon all iron ore mined and removed under said mining leases upon the premises above described which amounts are payable quarterly on the 20th. days of January, April, July and October of each year for the three calendar months preceding the day of payment and that in and by said agreements relating to said mining leases the

Savannah Iron Mining Company further agreed to pay to said Charles D. Fournier, Jr. an interest in the net profits resulting to said A. B. Coates and George P. Tweed and the Savannah Iron Mining Company from the explorations and operations carried on under said option for a mining lease and under the mining leases described in this decree, namely, one twenty-fourth (1/24th) interest in said profits.

It was further provided that Fournier was to account to the petitioner for one-half of the payment of $1,250 with interest thereon at 5 per centum per annum from March 15, 1913, and that he should transfer and set over to the petitioner one-half of his interest in the contracts above referred to.

Subsequent to the entering of the decree by the court, Pascoe assigned an undivided one-fourth interest of all moneys received or to be received and of all rights, profits, and privileges secured to Pascoe by the decree and by the contracts between Fournier and Coates and Tweed to M. J. Kennedy, the petitioner's attorney. Thereafter and on September 2, 1916, Coates and Tweed and the petitioner entered into an agreement under which the petitioner assigned to Coates and Tweed all of his remaining right, title, and interest to the contracts, profits, and royalties acquired under the decree, and received from Coates and Tweed an agreement that so long as the mining leases remained in force and effect they would pay the petitioner a royalty of 1½ cents per gross ton upon all iron ore mined and removed under the lease. These amounts were payable quarterly and a minimum royalty of 100,000 tons per year was provided for whether the amount was mined and shipped or not.

The agreement provided that all such payments of royalty and of minimum royalty should be made at the times and in the manner and with the same force and effect in every respect as provided in said mining lease with reference to the payment of royalty and minimum royalty. Such minimum royalty was to be computed from and began to run on July 1, 1916. The agreement further provided that all agreements contained in the contract should bind the heirs, executors, administrators and assigns of the respective parties to the contract and that the provisions contained in such contract should be construed as covenants running with the land.

The petitioner performed no service and engaged in no business for gain for the taxable year 1921 for these royalties. The holders of the mining option and lease having acquired property of great prospective value were willing to pay Fournier for his services in bringing the property to their attention. The payment was to take the form of a royalty upon ore mined. As the ore was mined from the property the petitioner became entitled through the agreement of September 2, 1916, to receive 1½ cents per ton royalty.

The decree of the court recites the leases executed by the fee owners to A. B. Coates and George P. Tweed, the agreement by the lessees,

Coates and Tweed and the Savannah Iron Mining Co., to pay to Fournier and others under two certain contracts dated November 19, 1912, and January 15, 1914, certain moneys, royalties, and profits upon all iron ore mined and removed under said mining leases from said premises.

The mining of ore under the lease commenced in 1916. The following table shows the ore mined from the property and the year in which it was mined down to and including the taxable year 1921.

| Year. | Tons. |
|---|---|
| 1916 | 330, 426 |
| 1917 | 658, 325 |
| 1918 | 816, 510 |
| 1919 | 366, 256 |
| 1920 | 696, 554 |
| 1921 | 428, 112 |
| Total | 3, 296, 183 |

In February, 1914, when the drilling records were completed, the petitioner estimated the tonnage of the mine at 14,000,000 tons. The petitioner was an experienced mining man and his estimate has been verified to a large extent by subsequent exploration and development.

### OPINION.

SMITH: Although the petitioner received $9,121.47 in royalties in the year 1921 he did not report any part of this amount as net taxable income by reason of having deducted therefrom the full amount for depletion. The deduction of the depletion was disallowed by the respondent upon the ground that—

* * * It is held by this office [Commissioner's office] that since you [the petitioner] are neither the lessor nor the lessee and have no interest in the mining lease, no depletion is allowable. The income received from the operation of mining property is not subject to depletion deductions based upon the value of an alleged equity in the mining lease and the entire amount received by reason of the assignment of the option constitutes taxable income for the year in which received.

The petitioner submits that he is entitled to deduct from gross income in his income-tax return for 1921, a reasonable amount for depletion and submits that—

The unit value is the present worth on March first, 1913 of 1½¢, and the depletion allowance for the year is the unit value multiplied by the tonnage mined [paid for, namely, 608,058].

Section 214 of the Revenue Act of 1921 permits an individual to deduct from gross income in his income-tax return, among other items:

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913;

\*          \*          \*          \*          \*          \*          \*

(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date \* \* \*.

The basis for a deduction for exhaustion or depletion under the provisions of the Revenue Act of 1921 is the fair market price or value as of March 1, 1913, where the property was acquired before that date and the cost where acquired after that date. In the case at bar, the record discloses that the petitioner acquired his interest in the property in question as a result of services performed for a partnership. No evidence has been introduced from which the Board can determine the value at the date of acquisition of the petitioner's interest, or at March 1, 1913, assuming that petitioner had an interest on that date. Upon the record, the action of the Commissioner in disallowing any deduction for exhaustion or depletion for 1921 must be and is sustained.

*Judgment will be entered for the respondent.*